## Case No. 12,209.

### SADLIER et al. v. FALLEN et al.

[2 Curt. 190.] [2]

Circuit Court, D. Rhode Island. Nov., 1854.

IMPRISONMENT FOR DEBT — DISCHARGE BY STATE COURT—INSOLVENT LAWS.

1. A debtor, committed under mesne process, issuing out of this court, cannot be lawfully discharged by an order of a state court, made under an insolvent law of the state.

2. Whether this court could act under such insolvent law and discharge him, quære.

[This was an action at law by Dennis L. Sadlier and others against Lawrence Fallen and others.]

Mr. Jenckes, for plaintiffs.
Mr. Curry, contra.

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[1] [Reported by Hon. William Cranch. Chief Judge.]

[2] [Reported by Hon. B. R. Curtis, Circuit Justice.]

CURTIS, Circuit Justice. This is an action of debt upon a bond for the prison limits. From the declaration and the third plea, which is demurred to, the following facts appear. At the November term, 1853, of this court, the plaintiffs recovered a judgment against Fallen. Before execution issued, his bail surrendered him; and he being in close jail, the defendants gave the bond declared on, in order that Fallen might have the benefit of the jail limits. The condition of the bond, as it appears upon oyer had, was in substance, that if Fallen, then a prisoner in jail at the suit of the plaintiff, should thenceforth continue a true prisoner within the limits of the prison, until he should be lawfully discharged, without committing any escape, then the bond was to be void. On the tenth day of December, 1853, up to which time he continued a true prisoner, Fallen filed his petition in the supreme court of Rhode Island, for the benefit of the insolvent law of that state; and that court ordered Fallen to be liberated from imprisonment under this process, on giving bond to return to jail agreeably to the provisions of that insolvent law. Fallen gave a bond, in compliance with that order of the supreme court, and thereupon the jailer discharged him from this imprisonment.

The insolvent law of Rhode Island, entitled, "An act for the relief of insolvent debtors" (Dig. 1844, p. 210), by its twenty-second section, provides, that one petitioning for the benefit of that law who shall be detained in jail upon a committal, or surrendered by his bail, shall be discharged from jail upon the presentation of his petition, and giving a bond with sureties to return to jail within ten days after the rising of the court at which the petition shall be finally disposed of, unless the petitioner shall receive his certificate of discharge.

The question is, whether this law of the state, and the action of the state court under it, were operative upon the mesne process issuing out of this court, under which Fallen was imprisoned. It is not argued that this law could operate proprio vigore, so as to discharge the defendant from imprisonment under process issuing from a court of the United States; but that congress, by the act of February 28, 1839 (5 Stat. 321), has adopted this law of the state, and made it applicable to this case. That act is in the following words,—"No person shall be imprisoned for debt in any state, on process issuing out of courts of the United States, where, by the laws of such state, imprisonment for debt has been abolished; and where, by the laws of the state imprisonment for debt shall be allowed under certain conditions and restrictions, the same conditions and restrictions shall be applicable to the process issuing out of the courts of the United States, and the same proceedings shall be had therein as are adopted in the courts of such state."

I find it impracticable to distinguish between the case at bar and the decision of the supreme court of the United States in Duncan v. Darst, 1 How. [42 U. S.] 301. In that case the debtor had been committed to jail on a ca. sa., and applied to a state judge and gave bond, pursuant to a law of the state, to appear at the next court of common pleas, and there take the benefit of the state insolvent law, and to surrender himself to jail if he failed to comply with all things necessary for his discharge. The law of Pennsylvania in that case was, in substance, the same as the law of Rhode Island in this case. Yet it was held that though the discharge from jail would have been lawful, if the debtor had been in under state process, it was not a lawful discharge from imprisonment under process of a court of the United States. That congress had not adopted, either by the process act of 1792 (1 Stat. 275), or of 1828 (4 Stat. 278), any state laws regulating process, which can be executed only by the state courts; and that so far as a state law is adopted, and does regulate or affect the process of the courts of the United States, it must take effect upon that process, through the action of the courts of the United States themselves, modifying their own process, or controlling its operation, so as to render it conformable to the laws of the state, and not by the action of state courts or judges upon that process, or upon its operation.

Now it is true this case arose before the act of 1839 was passed; but the process act of 1828 was quite as broad in its effects as the act of 1839, which is now in question; and the principles settled by the court in reference to the former, are entirely applicable to the latter statute. Indeed, the language of the act of 1839, points so clearly to the same intention, found by the court to have been entertained by congress in enacting the act of 1828, that it may properly be said to be a legislative declaration of the correctness of the principles of that decision. For its concluding words are, "and the same proceedings shall be had therein, as are adopted in the courts of such state." It is clear, therefore, that under this act, whatever was to be done to assimilate the effect of process out of the courts of the United States, to the effect of process out of the state courts, was to be done in and by the courts of the United States. acting on their own process, by changing its requirements, or controlling its effects upon motion, and not by orders or decrees of state courts operating thereon.

Nor is this inconsistent with the decisions of the supreme court of the United States in Beers v. Haughton, 9 Pet. [34 U. S.] 329; U. S. v. Knight, 14 Pet. [39 U. S.] 301. For though in those cases effect was given to the state laws, discharging from, and regulating imprisonment for debt, yet effect was not given to an order or decree of a state court operating upon, and controlling process out of the courts of the United States, as is attempted in this case. Here Fallen was im-

prisoned under mesne process issuing out of this court. He was released from that imprisonment by an order of the supreme court of Rhode Island. My opinion is, that congress has not made that order capable of controlling the precept of this court.

If Fallen had so far complied with the state law as to be entitled to go at large from all restraint, by surrender by his bail under state process, upon giving a bond with condition, it may be that on application to this court, it would have been our duty to grant him the same indulgence in respect to his imprisonment, under similar proceedings of this court. If this law of Rhode Island existed when the act of 1839 was passed, and was adopted thereby, it might be found practicable thus to give effect to it. Vide McCracken v. Hayward, 2 How. [43 U. S.] 608; Catherwood v. Gapete [Case No. 2,513]. But I do not express any opinion upon either of these points, because they do not exist in the case.

The result is, that the order of the state court did not justify the departure of Fallen from the prison limits, and the third plea is therefore bad on demurrer.